FILED
United States Court of Appeals
Tenth Circuit

July 26, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

PATRICK G., by and through his
parents and next friends, Stephanie G.
and Daniel G.,

       Plaintiffs - Appellants,

v.

HARRISON SCHOOL DISTRICT NO.
2,

       Defendant - Appellee.

No. 20-1372

---

### Appeal from the United States District Court
### for the District of Colorado
### (D.C. No. 1:17-CV-01034-MSK-KLM)

---

Jack D. Robinson, Spies, Powers & Robinson, P.C., Denver, Colorado, for
Plaintiffs-Appellants.

John R. Stanek, Anderson, Dude & Lebel, P.C., Colorado Springs, Colorado, for
Defendant-Appellee.

---

Before **HOLMES**, **BALDOCK,** and **MATHESON**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

The Individuals with Disabilities Education Act, or "IDEA," requires states receiving federal funding to offer children with disabilities a "free appropriate public education" ("FAPE") in the "[l]east restrictive environment." 20 U.S.C. § 1412(a). Patrick G. is a seventeen-year-old boy with autism who qualifies for special educational services under the IDEA and who, since 2013, has been attending the Alpine Autism Center for school. In 2016, Harrison School District No. 2 (the "School District" or the "District") proposed transferring Patrick from Alpine to a special program at Mountain Vista Community School allegedly tailored to Patrick's needs. Plaintiffs-Appellants Patrick's parents challenged this decision on Patrick's behalf, first in administrative proceedings and then in the U.S. District Court for the District of Colorado, alleging that the School District committed a host of violations in crafting an "individualized educational plan" ("IEP") for Patrick in 2015 and 2016.

After several years of litigation, the district court, relying on two of our recent IDEA decisions—both of which also involved challenges to Harrison School District No. 2's placement of children with autism—determined that the expiration of Patrick's 2016 IEP rendered the Parents' lawsuit moot; in other words, there was no longer a live controversy for the court to resolve. Significantly, the district court held several related issues—including the Parents' request for attorney's fees from the administrative proceedings, their argument that the School District had incorrectly reimbursed the Parents' insurance

2

provider instead of the Parents themselves, and their motion for a "stay put" injunction to keep Patrick in his current educational placement during the proceedings—were also moot. The Parents contend the district court erred by failing to find their substantive IDEA claims fall into the "capable of repetition, yet evading review" exception to mootness. And, even if their substantive IDEA claims do not fall within this exception, they posit that their requests for attorney's fees, reimbursement, and a "stay put" injunction continue to present live claims.

Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm in part** and **reverse in part**. The Parents' substantive IDEA claims are moot, and do not fall within the capable-of-repetition-yet-evading-review exception. And because those substantive claims are moot, the Parents' stay-put claim—which implicitly depends on the substantive IDEA claims—is now also moot. The Parents' claims for attorney's fees and reimbursement, however, continue to present live controversies. We hold these claims are not moot, and we remand to the district court to rule on the merits of these claims in the first instance.

## I

We begin by describing the IDEA's underlying legal and procedural framework. We then summarize the relevant factual and procedural history that led to the district court's challenged mootness determination.

3

**A**

The IDEA, codified at 20 U.S.C. § 1400 *et seq.*, is a federal statute enacted pursuant to Congress's Spending Clause power. *See Chavez ex rel. M.C. v. N.M. Pub. Educ. Dep't*, 621 F.3d 1275, 1277 (10th Cir. 2010); *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1235–36 (10th Cir. 2009). Among other things, it "requires states that accept federal special education funds to provide disabled children with a 'free appropriate public education' ('FAPE') in the 'least restrictive environment.'" *Ellenberg v. N.M. Mil. Inst.*, 478 F.3d 1262, 1267 (10th Cir. 2007). The "primary tool" in ensuring that "all eligible children with disabilities" are provided with a FAPE "is the [statute's] requirement that the state create an individualized education plan ('IEP') for each disabled child." *Miller*, 565 F.3d at 1236. The IEP "is the means by which special education and related services are 'tailored to the unique needs' of a particular child," and it "must be drafted in compliance with a detailed set of procedures" by "a child's 'IEP Team' (which includes teachers, school officials, and the child's parents)." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, --- U.S. ----, 137 S. Ct. 988, 994 (2017) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 181 (1982)); *see also Miller*, 565 F.3d at 1236 ("The IEP is a written statement that sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures to determine

whether the child has met the goals." (quoting *Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1043 (10th Cir. 1993))). "Review of IEPs must occur at least annually, and [they] are to be revised as appropriate." *Ellenberg*, 478 F.3d at 1268.

In the event of "inevitable conflicts" between students, parents, and state agencies, *Chavez*, 621 F.3d at 1277—and especially "[w]hen parents believe their child is not being provided a FAPE in the least restrictive environment"—the IDEA offers an opportunity "to present complaints with respect to any matter relating to the . . . educational placement of the child, or the provision of a free appropriate public education to such child," *Miller*, 565 F.3d at 1236 (omission in original) (quoting 20 U.S.C. § 1415(b)(6)); *see* 20 U.S.C. § 1415(b)(7)(A)(ii) (explaining required contents of a notice of complaint filed under subsection (b)(6), including, *inter alia*, "(III) a description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem," and "(IV) a proposed resolution of the problem"). In addition to informal or "somewhat . . . formal[]" dispute resolution options, such as "[p]reliminary meeting[s]" and "mediation," *Endrew F.*, 137 S. Ct. at 994 (second alteration in original) (quoting 20 U.S.C. § 1415(e), (f)(1)(B)(i)), the IDEA entitles a complaining party to "an impartial due process hearing," *Miller*, 565 F.3d at 1236; *see* 20 U.S.C. § 1415(f)(1)(A) ("Whenever a complaint has been received . . ., the parents or the local educational agency involved in such

complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency."); *id.* § 1415(f)(1)(B)(ii) ("If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur . . . ."). "The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice [of due process complaint], unless the other party agrees otherwise." 20 U.S.C. § 1415(f)(3)(B).

"[A]t the conclusion of the administrative process, the losing party may seek redress in state or federal court." *Endrew F.*, 137 S. Ct. at 994; *see* 20 U.S.C. § 1415(i)(2)(A) ("[A]ny party aggrieved by the findings and decision made [by the administrative hearing officer] shall have the right to bring a civil action *with respect to the complaint presented pursuant to this section . . .* in a district court of the United States . . . ." (emphasis added)). The IDEA also enables "a prevailing party who is the parent of a child with a disability" in "any action" brought under § 1415—including the administrative proceedings—to move for attorney's fees, which the district court may award at its discretion. 20 U.S.C. § 1415(i)(3)(B)(i)(I).

Lastly, § 1415(j), often referred to as the IDEA's "stay put" provision, entitles a child involved in IDEA proceedings to "remain in [his or her] then-

current educational placement" until "all such proceedings have been completed." *Id.* § 1415(j); 34 C.F.R. § 300.518(a) ("[D]uring the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing . . ., unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement.").  The stay-put provision thus operates as an "automatic statutory injunction," *Miller*, 565 F.3d at 1252 n.13 (quoting *Norman K. ex rel. Casey K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 510–11 (7th Cir. 2005)), which "prevent[s] school districts from 'effecting unilateral change in a child's educational program,'" *Erickson v. Albuquerque Pub. Schs.*, 199 F.3d 1116, 1121 (10th Cir. 1999) (quoting *Susquenita Sch. Dist. v. Raelee S. ex rel. Heidi S.*, 96 F.3d 78, 83 (3d Cir. 1996)).

With this legal framework as background, we turn to the Parents' dispute with the School District.

**B**

**1**

Patrick G. is a legal minor "who has been diagnosed with autism spectrum disorder (autism) and speech delays."[1] Aplts.' App., Vol. III, at 706 (Dec. of Administrative Law Judge ("ALJ"), dated Apr. 18, 2017). Patrick was eleven years old when the conflict between his Parents and the School District began; he is now seventeen years old. It is uncontested that Patrick's condition qualifies him for "special education services adequate to provide [him a] FAPE." *Id.* at 707.

In August 2013, Patrick's parents enrolled him in the School District after his family moved to Colorado Springs. As part of the transition, Patrick's mother met with District officials and provided them with Patrick's prior school records, including his IEP. The School District "did not convene a new IEP meeting, but [instead] offered [Patrick] placement in a center based program, and referred him to Centennial Elementary School." *Id.* But Patrick's mother, after touring the school, felt its academics were "too rigorous" for Patrick, and requested, as an

---

[1]    Where possible, we rely on the factual recitation from the decision rendered in Patrick's administrative due process proceedings. *Cf. Sytsema ex rel. Sytsema v. Acad. Sch. Dist. No. 20*, 538 F.3d 1306, 1311 (10th Cir. 2008) (noting that, when the district court reviews an administrative order in the IDEA context, it "must 'give "due weight" to the [administrative] hearing officer's findings of fact, which are considered *prima facie* correct'" (quoting *L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004))). Neither party contests the administrative law judge ("ALJ")'s characterization of the facts at issue.

alternative, "placement for [Patrick] at Alpine,"[2] where she had "placed [him] on the waitlist in the summer of 2013." *Id.* at 707–08. Ultimately, the School District "offered [Patrick] placement at Alpine," despite the fact that Alpine does not offer speech-language pathology ("SLP") or occupational therapy ("OT") services, which Patrick uses.[3] *Id.* at 708.

This dispute arises from the School District's efforts to update Patrick's 2016 IEP, effectively changing Patrick's educational placement from Alpine to Mountain Vista Community School ("Mountain Vista").[4] Beginning in April

---

[2] Alpine "is a private, non-profit treatment facility in Colorado Springs"; it "is not a school certified by the [Colorado Department of Education] and does not have licensed special education teachers on its staff." Aplts.' App., Vol. III, at 708. Students "do not earn academic credit"; rather, Alpine "focuses on behavioral management because uncontrolled behavior seriously interferes with academic progress." *Id.* At the time of the ALJ's decision, Patrick was "in a classroom with no other students." *Id.*

[3] The School District did not provide SLP and OT services during Patrick's initial years at Alpine. In administrative proceedings, the parties disputed whether the School District was obligated to provide such services. The ALJ at Patrick's due process hearing found there was "insufficient evidence . . . to conclude that the District offered to provide SLP or OT to [Patrick in 2013] *if he was not [placed] at a public school*." Aplts.' App., Vol. III, at 708 (emphasis added). That said, "[t]he District told [Patrick's mother] that a District employee would provide [SLP and OT] services," but "no one from the District contacted [the Parents] about SLP and OT for [Patrick]," despite Patrick's mother "ma[king] several phone calls to the District regarding [these services]." *Id.* Ultimately, "TRICARE, [the Parents'] insurance carrier, . . . pa[id] for [Patrick] to receive SLP and OT [services] at Alpine," starting around the end of 2015. *Id.*

[4] This was not the School District's first attempt to alter Patrick's educational placement. In April 2014, the District "convened an IEP meeting to discuss [Patrick's] services and placement for the following school year." Aplts.'

(continued...)

2015, Patrick underwent comprehensive evaluations, and his Parents met with

District officials at both Alpine and Mountain Vista pursuant to the triennial

process to reestablish Patrick's IDEA eligibility.

As part of this evaluation process, Patrick's IEP Team met with a neutral

facilitator on January 8, 2016, to discuss updating his IEP.[5]  The IEP Team first

concluded Patrick "did not exhibit the need for a Behavioral Intervention Plan

(BIP) based on the behaviors he exhibited during the [2015] evaluations," but

stated they would revisit this determination if things changed.  *Id.* at 717.  They

then "discussed the advantages and disadvantages of both Alpine and Mountain

---

[4](...continued)
App., Vol. III, at 709.  It "did not offer a specific placement for [Patrick]," but
told Patrick's parents that, "although [Patrick] had made [undisputed] progress at
Alpine," it would "no longer be an option for him" going forward.  *Id.*  His
Parents, along with three other families, then filed a complaint with the Colorado
Department of Education in August 2014, "challenging the District's decision to
remove their children from Alpine."  *Id.*  A State Complaints Officer ("SCO")
issued a decision in October 2014, "finding that the School District's plan to
change [Patrick's] placement [from Alpine], and the manner in which it was done,
. . . violated the IDEA."  *Id.*  To remedy these violations, the SCO "ordered the
School District to resume funding [Patrick's] placement at Alpine and prohibited
any future change of placement" absent satisfaction of certain conditions.  *Id.*
The School District did not appeal the decision, and Patrick remained at Alpine in
the ensuing months.  *See id.*

[5]     As noted *supra*, a student's IEP Team determines the student's
"needs, educational services, and placement," and is comprised of, "at a
minimum: the child's parent(s), a regular education teacher if the child is or may
be placed in a regular education environment, a special education teacher, a
supervisory representative of the school district, and, at the discretion of the
parent(s), any other person who has knowledge or special expertise regarding the
child."  Aplts.' App., Vol. III, at 714; *see also Endrew F.*, 137 S. Ct. at 994.

Vista." *Id.* at 718; *see id.* (comparing the advantages of Mountain Vista—which "were that [Patrick] would receive specialized, small-group[] social and academic instruction in the special education classroom for the majority of his school day while still accessing the general education environment to practice learned social skills" and "more rigorous, tailored academic instruction"—with the advantages of Alpine—which were that Patrick could continue his current placement, where he was admittedly making progress).  At the conclusion of the January 2016 meeting, "[a]ll of the team members, with the exception of [the Parents], opined that [Patrick's] goals could best be met at Mountain Vista . . . . and th[at its] public school setting was the least restrictive environment for him." *Id.*

The Parents disagreed with the IEP Team majority's assessment and threatened to file a due process complaint if Patrick were removed from Alpine. The School District, accordingly, maintained Patrick's placement at Alpine until May 2016, when it convened another meeting to discuss Patrick's IEP and potential transition from Alpine to Mountain Vista.  The parties, though, reached an "impasse." *Id.* at 719.  Patrick's mother was "firm in her position" that Patrick should remain at Alpine and that the School District would not convince her to change his placement to Mountain Vista.  *Id.*  The District, on the other hand, "was confident that it had offered [Patrick the requisite] FAPE" at Mountain Vista; accordingly, "it discontinued its payments to Alpine on May 20, 2016." *Id.* at 720.

**2**

In response to the School District's decision to discontinue payments to Alpine, and to the general impasse over Patrick's 2016 IEP, the Parents filed a due process complaint on Patrick's behalf on August 25, 2016.  Specifically, they alleged the School District committed myriad procedural and substantive violations regarding Patrick's 2016 IEP, including that the District (1) "failed to provide Patrick the speech language and occupational services required in his" IEP for several years; (2) "failed to comply with the . . . requirements of" the IDEA, thereby denying Patrick a FAPE; (3) "significantly changed Patrick's educational placement without conducting a full or adequate reevaluation of Patrick"; (4) "failed to include as members of Patrick's IEP Team individuals who had specific and current knowledge about Patrick and his educational needs," including "staff from [his] current educational placement at Alpine"; and (5) "pre-determined Patrick's educational placement at Mountain Vista" without considering his "individual educational needs and abilities," thereby "depriv[ing] [Patrick's p]arents [of the chance to] meaningfully participat[e] in [his] educational placement decision . . . [and] develop[] . . . [his] May 2016 IEP." *Id.* at 602–03 (Due Process Compl., dated Aug. 25, 2016).

As relief, the Parents requested "an order requiring the School District to place Patrick at Alpine . . . and reimburse the Parents for the costs associated from this educational placement [at Alpine] from May 20, 2016 to the present."

*Id.* at 603.  The Parents also sought to order "the School District to provide

Patrick compensatory SLP and OT services required by Patrick's IEPs . . . and

compensate [his] Parents for the expense of providing Patrick with future

[therapy] services."  *Id.*  In the course of the administrative proceedings, the

School District agreed to provide reimbursement for the costs of SLP and OT

services provided by TRICARE, the parents' insurer; the parties continued to

dispute, however, whether the District should reimburse TRICARE or Patrick's

parents directly.

In April 2017—during the 2016–17 school year to which the IEP

applied—the ALJ announced her decision following a four-day due process

hearing.  First, the ALJ rejected the Parents' arguments that the District had failed

to comply with the IDEA's procedures and had denied Patrick a FAPE, finding

Patrick's 2016 IEP complied procedurally and substantively with the IDEA.  *See*

*id.* at 723–24 (finding that the "credible evidence in th[e] case demonstrate[d] that

the [District's] procedural violations, if any, did not impede [Patrick's] right to a

FAPE, nor did they significantly impede [his] parents' opportunity to participate

in the decision-making process, nor did they cause a deprivation of [Patrick's]

educational benefit[s]"); *id.* at 725–27 (concluding that Patrick "is capable of

learning in a less restrictive environment than the one he is currently in at Alpine"

and that, consequently, "the District's proposed placement [at Mountain Vista] in

the 2016 IEPs is reasonably calculated to enable [Patrick] to receive educational

benefit and complies with . . . the IDEA").

Second, the ALJ rejected the Parents' claim for compensatory education for the SLP and OT services they alleged Patrick was denied before 2015 when he was initially placed at Alpine. It found that these services were included in Patrick's April 2014 and 2016 IEPs, but that he did not receive SLP and OT services until TRICARE began paying for them in December 2015. Nevertheless, because Patrick's inability to receive these services had not "resulted in an educational deficit," the "appropriate remedy" was for the District to provide reimbursement for the OT and SLP services that TRICARE had covered—reimbursement the District had agreed to in the course of the proceedings. *Id.* at 728.

Third, the ALJ noted that although the School District had agreed to pay Patrick's Alpine tuition costs and his SLP and OT service costs from January 2016 forward, a dispute remained over whether "the check should be made payable to both [the Parents] and TRICARE." *Id.* The ALJ found the Parents "failed to establish that they . . . suffered any financial loss other than [a] $35 per month premium paid to TRICARE, and . . . failed to establish that they . . . exhausted, or are exhausting, their benefits through TRICARE." *Id.* Further, the District was "not trying to avoid payment of the expenses and derive a benefit from the payment of the costs by TRICARE"—indeed, it was "willing to pay TRICARE, the entity who actually expended the resources." *Id.* Because the

14

Parents "ha[d] not expended any money, other than the monthly premiums, and

therefore, [were] not entitled to reimbursement for funds they ha[d] not paid," the

District was permitted, but not required, "to make the [relevant] check payable to

. . . TRICARE, as well as [the Parents]." *Id.* But the District needed to

"reimburse [the Parents] directly for the $35 monthly premiums and any other

amounts they, themselves, expended for [Patrick's] costs at Alpine and his SLP

and OT services." *Id.* at 728–29.

In sum, the ALJ concluded that (1) the District's 2016 IEP for Patrick

"constitute[d] an offer of a FAPE" in the least restrictive environment; (2) the

Parents "failed to meet their burden that [Patrick was] entitled to compensatory

services for OT and SLP therapy"; and (3) the Parents had "met their burden in

establishing that the District owe[d] reimbursement for the costs at Alpine and for

private OT and SLP services," but that the District had "discretion to include

TRICARE as a payee on the reimbursement payment," except as to "any

expenditures, such as . . . monthly premium[s]," made by the Parents, for which

they were entitled to direct reimbursement. *Id.* at 729.

**3**

A little more than a week later, Patrick's parents filed a "Complaint for

Attorney Fees and Appeal of Agency Decision" in Colorado federal district court.

*Id.*, Vol. I, at 8–24 (Compl. For Att'y Fees & Appeal of Agency Dec., filed Apr.

26, 2017) (capitalization omitted). First, the Parents sought "to recover attorneys

15

fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B) as a prevailing party at an impartial due process hearing conducted pursuant to 20 U.S.C. § 1415(f)." *Id.* at 9; *see also id.* at 22. The Parents also generically contended, in their second claim for relief, they were "aggrieved, at least in part, by the findings and decision of the ALJ," and sought "review and reversal of those findings and decision adverse to" them. *Id.* at 23. As relief, they requested, *inter alia*, "an Order for the recovery of . . . attorney fees and costs in the underlying due process action"; "an Order requiring the School District to issue a check to [the] Parents, without TRICARE as a payee, for the costs of Alpine and the SLP and OT services"; that the district court "reverse the findings and decision of the ALJ adverse to [the Parents]"; and that the court conclude the District's proposed 2016 IEP was "not reasonably calculated to provide Patrick an appropriate education." *Id.*; *cf. Patrick G. ex rel. Stephanie G. v. Harrison Sch. Dist. No. 2*, No. 17-cv-01034, 2020 WL 5877604, at *1 n.2 (D. Colo. Oct. 2, 2020) (the district court explaining its "understand[ing] [of] th[e] challenge [as] limited to the ALJ's ruling that the 2016 IEP was reasonably calculated to provide Patrick with a FAPE and a request for attorney fees").

Throughout the administrative proceedings and, at first, following the commencement of the district court action, the School District continued to pay Patrick's placement costs at Alpine. But after two years of district court proceedings, it informed Patrick's parents that it would terminate its contract and

16

cease paying for Alpine "[i]n light of recent court decisions."[6] *See* Aplts.' App., Vol. I, at 202 (Email from Amy Lloyd, dated Oct. 21, 2019). In response, the Parents moved for a "stay put" injunction pursuant to 20 U.S.C. § 1415(j). *See id.* at 180–93 (Pl.'s Mot. for "Stay Put" Inj., filed Oct. 23, 2019). They requested that the court "require[] the School District to maintain Patrick's [stay put] placement"—*viz*, his "then-current educational placement"—"pending completion of th[e] case." *Id.* at 181.

**4**

While the Parents' district-court appeal and request for injunctive relief were pending, two developments led the district court to order supplemental briefing on whether the IDEA challenge had become moot. First, Patrick's challenged 2016 IEP expired and was superseded by subsequent IEPs, which continued to recommend that Patrick be placed in public schools instead of

---

[6] Specifically, the School District asserted, under a district court's recent decision in *Smith v. Cheyenne Mnt. Sch. Dist. 12*, No. 19-cv-2345, 2019 WL 4201503 (D. Colo., Sept. 5, 2019) that "for 'stay put' to apply, an IEP would have to indicate that receiving services at the place where a student was currently enrolled was a 'basic element' of their IEP." Aplts.' App., Vol. I, at 204–05 (Def.'s Resp. to Pls.' Mot. for "Stay Put" Inj., filed Oct. 25, 2019). The District argued Alpine itself, as a physical school location, was not a "basic element" of Patrick's IEP and, therefore, the District's "stay put" obligations did not require that it keep Patrick there. *See id.* at 211–12 ("Judge Martinez agreed with the Colorado Department of Education that 'stay put' refers to the *services* contained in the IEP, not the *setting* where the services are to be performed. . . . [Because] [t]here is nothing in the 2016 IEP that requires that the services contained therein be provided at . . . Alpine . . .[,] it [therefore] is not [Patrick's] 'stay put' placement . . . ." (footnote omitted)).

Alpine.  *See id.*, Vol. II, at 493 (Pls.' Supp. Br., Ex. 1, 2019 IEP, filed May 1, 2020) (maintaining Patrick's placement at Mountain Vista); *id.* at 414 (Def.'s Supp. Br., Ex. O, 2020 IEP, filed May 1, 2020) (recommending Patrick be placed at Harrison High School); *see also Ellenberg*, 478 F.3d at 1268 (noting that "[r]eview of IEPs must occur at least annually").  Second, we issued two published decisions defining the contours of mootness in the IDEA context: *Steven R.F. ex rel. Fernandez v. Harrison School District No. 2*, 924 F.3d 1309 (10th Cir. 2019), and *Nathan M. ex rel. Amanda M. v. Harrison School District No. 2.*, 942 F.3d 1034 (10th Cir. 2019).  As in the instant case, each dispute involved IEP proceedings in the School District that would have effectively relocated students with autism to a public school in lieu of Alpine.

In *Steven R.F.*, the plaintiff's mother filed a state complaint alleging that the District violated a prior administrative ruling and, more broadly, violated the IDEA in crafting her son's 2016 IEP.  *See* 924 F.3d at 1311–12.  After a state hearing officer found for the mother, an ALJ reversed, concluding the District had made an offer of FAPE, and that any alleged procedural violations of the IDEA were effectively harmless.  *See id.* at 1312.  The mother appealed to the federal district court, asking the court "to find that the 2016–2017 IEP denied [her son] the FAPE to which he [was] entitled."  *Id.*  The district court reversed the ALJ's decision by finding for the mother on the merits, concluding "the District had violated the 2014 SCO Order and various procedural protections within the IDEA,

18

and that these violations amounted to the denial of a FAPE." *Id.* at 1312–13.  It ordered the District to reimburse the mother for her son's 2016-17 tuition at Alpine, and awarded the mother attorney's fees as the prevailing party in the district court.  *See id.* at 1313.  The School District appealed.

On appeal, we concluded the dispute between the District and the student's mother was technically moot, because the 2016 IEP on which the dispute was based had expired.  We further held the District had failed to establish that the dispute fell into the "capable of repetition, yet evading review" exception to mootness, because it could not show "there [was] a 'reasonable expectation' that it w[ould] be subjected to the same action again." *Id.* at 1314.  In vacating the district court's order, we additionally vacated the court's award of attorney's fees to the mother, opining that "[b]ecause the case [was] moot, the [district] court d[id] not have jurisdiction to make a determination on the merits, and [the] [m]other [could not] be a 'prevailing party' under the IDEA." *Id.* at 1316 n.7.

*Steven R.F.* was followed several months later by *Nathan M*.  In that case, the child's mother challenged his 2016 IEP before the Colorado Department of Education, and a state hearing officer found the District "had failed to develop the 2016 IEP in accordance with the IDEA."  942 F.3d at 1038.  The District, in response, filed a due process complaint before an ALJ, arguing that the 2016 IEP offered the child a FAPE and, thus, complied with the IDEA.  *See id.*  The ALJ agreed, concluding the District "met its burden of establishing that the [2016 IEP]

19

represented an offer of [a] FAPE . . . as required under the [IDEA]," and that the mother "failed to meet [her] burden of establishing that [her child] was denied [a] FAPE as a result of procedural violations alleged in the development of the IEP." *Id.* (first, second, third, fourth, and sixth alterations in original).

The mother appealed to federal district court, claiming "(1) the District had committed various procedural and substantive IDEA violations resulting in the denial of a FAPE to [her son], and (2) the District had predetermined to place [her son] in [another school] instead of Alpine." *Id.* The district court disagreed and upheld the ALJ's decision on the merits. *See id.* at 1038–39. The mother appealed, "reasserting the various procedural and substantive IDEA violations she argued before the district court." *Id.* at 1039.

Relying heavily on *Steven R.F.*, we again concluded the mother's appeal was moot, and could not meet the capable-of-repetition-yet-evading-review exception. "As was the case in *Steven R.F.*," Nathan M.'s mother "allege[d] a variety of procedural and substantive IDEA violations regarding [her son's] 2016 IEP." *Id.* at 1044. Evaluating "in turn" whether each alleged IDEA violation "[was] likely to recur," we reasoned that the mother, to start, "ma[de] no attempt to show that any alleged procedural violations of the IDEA are capable of repetition," thereby "seemingly waiv[ing] any argument that th[ose] various . . . violations . . . [were] not moot." *Id.* Notwithstanding these preservation problems, we concluded that the mother had failed to establish that any of the

20

alleged violations—procedural or substantive—were "likely to recur." *Id.* We concluded that, because "our decision on the merits of [the child's] 2016 IEP could have no effect 'in the real world,' and could do nothing to avoid future conflict," the case was moot "and not capable of repetition but evading review." *Id.* at 1046 (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010)).

**5**

Following supplemental briefing on the mootness issue, the district court held the entire case was moot. *See generally Patrick G.*, 2020 WL 5877604. It first examined the Parents' core claim that the District had denied Patrick a FAPE. The court noted that, as in *Steven R.F.* and *Nathan M.*, no party disputed "that th[e] action [was] technically moot insofar as the 2016 IEP ha[d] concluded." *Id.* at *4. Thus, the critical question was "whether Patrick's parents . . . established that it [was] reasonably likely that the District w[ould] commit the same alleged violations of the IDEA" in the future. *Id.*

As to the Parents' first four asserted violations, the court held that these "appear[ed] to be procedural" and, more to the point, the Parents "d[id] not cite to anything in the record indicat[ing] that they [were] likely to be repeated." *Id.* at *5. Under *Nathan M.*, then, these allegations were moot. Likewise, Patrick's parents "d[id] not identify why a future IEP would not include" a behavioral intervention plan for Patrick—an alleged deficiency of the 2016 IEP. *Id.* Nor did

21

the Parents "identify certain behaviors that the District failed to consider, much less explain why the behavioral accommodations included in the 2016 IEP were insufficient." *Id.* While the Parents disagreed with the District's decision regarding a behavioral intervention plan (or the lack of a need for one), "there [was] nothing presented to suggest that consideration of [such a plan] in the future would not occur, or that strategies to regulate [Patrick's behavior] would not be employed." *Id.* This dispute, then, "appear[ed] to be a factual one limited to the 2016 IEP." *Id.*

The district court then turned to the Parents' alleged "substantive" violations. It reasoned that the Parents' lack of explanation surrounding how "Mountain Vista denie[d] Patrick a FAPE, and how [such a] denial [was] likely to continue" was too "vague" to show an ongoing controversy. *Id.* at \*6; *see id.* ("[A]lthough Patrick's parents preferred that he attend Alpine, there is no showing that their disagreement with the District will be a 'continuing controversy' that presents legal questions rather than simply fact specific challenges to the 2016 IEP." (quoting *Nathan M.*, 942 F.3d at 1045)). The court also rejected the argument from Patrick's parents that "their dispute [was] an ongoing legal disagreement 'based on school district policy/philosophy that favors academic progress over behavioral progress.'" *Id.* (quoting Aplts.' App., Vol. II, at 490). "How . . . different philosophies play out . . . is fact-specific to a given IEP," and, therefore, the court declined to "speculate[,] based on an expired

22

IEP, how future IEPs might be formulated." *Id.* Patrick's parents, then, "failed to establish that [it was] reasonably likely that the District w[ould] commit the same alleged violations of the IDEA at some point in the future." *Id.*

Notably, the district court reached the same mootness conclusion with regard to the Parents' "claim for recovery of monetary damages such as reimbursement of educational and related services, attorney fees and injunctive relief." *Id.* The court pointed out that the "substantive claims which pertain only to the expired 2016 IEP are moot"; "[a]s a consequence, there [was] no monetary remedy to which Patrick's parents [were] entitled." *Id.*; *see id.* at *6 n.6 (noting that "the District ha[d] agreed to pay for Patrick's tuition at Alpine and issued a check in an undisputed amount for the time period from May 20, 2016 through February 28, 2017 payable to both Patrick's parents and TRICARE"). Similarly, the Parents were not entitled to a "stay put" injunction because such an injunction would be "based upon . . . substantive claims that are now moot"—thus, "it too [would be] moot." *Id.* at *6 n.6; *see id.* at *6 n.8 ("[T]he pending request for a 'stay put' order to continue Patrick's placement at Alpine is moot because it is premised on the substantive claims previously addressed." (citation omitted)). Nor could the court consider the Parents' attorney's fee claim, because determining whether they were "prevailing part[ies]" would "require the determination of the merits of moot claims." *Id.* at *7.

Accordingly, the court dismissed the suit in its entirety, having found "that

all claims asserted . . . [were] moot." *Id.* This appeal followed.

## II

This appeal requires us to decide whether the Parents' claims are moot. The "existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Garcia v. Bd. of Educ. of Albuquerque Pub. Schs.*, 520 F.3d 1116, 1123 (10th Cir. 2008) (quoting *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996)); *see Nathan M.*, 942 F.3d at 1040 ("Our jurisdiction under Article III extends only to 'actual, ongoing controversies.'" (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988))). "We review questions of constitutional mootness de novo." *Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805, 810 (10th Cir. 2022).

"To satisfy the case-or-controversy requirement of Article III, 'the parties "must continue to have a personal stake in the outcome of the lawsuit" throughout the various stages of litigation.'" *Steven R.F.*, 924 F.3d at 1313 (quoting *Garcia*, 520 F.3d at 1123); *see Garcia*, 520 F.3d at 1123 (explaining that the case-or-controversy requirement "means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision" (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998))). "The crucial question" in our mootness analysis is whether our decision "will have some effect in the real world." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quoting

24

*Brown v. Buhman*, 822 F.3d 1151, 1165–66 (10th Cir. 2016)). Thus, "[i]f an actual controversy ceases to exist at any stage of litigation"—*viz*, if our resolution of a claim will no longer have any effect in the real world—"the case has become moot and should be dismissed." *Nathan M.*, 942 F.3d at 1040.

Of course, some controversies may be so brief in duration that courts cannot resolve their underlying issues—even though nearly identical issues will continue to resurface in future cases. These cases, "which appear technically mooted, [but] are in reality live controversies because they will recur and again evade review," fall under the eponymous "capable of repetition yet evading review" exception to mootness. *Id.* (quoting *Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1478 (10th Cir. 1984)). This doctrine "applies only in 'exceptional situations,'" *Steven R.F.*, 924 F.3d at 1313 (quoting *Spencer*, 523 U.S. at 17), but it can prevent dismissal of an otherwise moot dispute "when '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again,'" *Nathan M.*, 942 F.3d at 1040 (alteration in original) (quoting *Steven R.F.*, 924 F.3d at 1313). "[T]he party asserting the exception . . . bears the burden of establishing that it applies." *Id.*

The Parents' claims center on two core issues that implicate our mootness doctrine and the capable-of-repetition exception. First—as in *Steven R.F.* and

25

*Nathan M.*—we must determine whether their claims that the School District denied Patrick a FAPE in his 2016 IEP fall under the capable-of-repetition exception to mootness. We conclude that the exception does not apply; consequently, we lack jurisdiction over these claims. Second, we must decide whether our mootness determination as to the Parents' substantive IDEA claims in turn renders moot their claims for attorney's fees, reimbursement for past violations, and enforcement of the § 1415(j) stay-put order. Addressing each issue separately, we hold the Parents' attorney's fee and reimbursement claims present live controversies which the district court incorrectly dismissed as moot. The Parents' stay-put claim for injunctive relief, however, is moot. We thus affirm the district court's dismissal of the substantive IDEA and stay-put claims for lack of jurisdiction, while reversing and remanding its determination as to the Parents' attorney's fee and reimbursement claims.

A

We first hold that the Parents' substantive IDEA claims are moot. As noted above, "[i]f an actual controversy ceases to exist at any stage of litigation, the case has become moot and should be dismissed." *Nathan M.*, 942 F.3d at 1040. The Parents do not seriously contest that Patrick's 2016 IEP has expired, rendering their IDEA claims—all of which challenge aspects of the 2016 IEP and the procedures used to adopt it—technically moot. Rather, they contend that the "capable of repetition, yet evading review" exception applies. *See* Aplts.'

26

Opening Br. at 23 (claiming this case is capable of repetition, yet evading review, because "the heart of th[e] case involves an irreconcilable dispute between the Parents and the School District about Patrick's educational placement needs, which will be an issue of controversy *every time* the School District develops a new IEP or proposes a new placement" (emphasis added)).

The first prong of the exception—which requires the challenged action to be too short to be fully litigated—is "clearly satisfied," because the 2016 "IEP is, by its nature, 'too short [in duration] to be fully litigated prior to its . . . expiration.'" *Steven R.F.*, 924 F.3d at 1313 (alteration and omission in original) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam)); *see also Nathan M.*, 942 F.3d at 1040 (holding a parent had "easily satisfie[d] the first prong of the capable-of-repetition-yet-evading-review exception" because "IEPs are short-lived—lasting for only a single school year—and judicial review is not"). We thus turn to the "pivotal issue" in the IEP controversy; that is, whether there is a "'reasonable expectation' that [Patrick] will be subjected to the same action again." *Steven R.F.*, 924 F.3d at 1314. We conclude that no such "reasonable expectation" exists as to the Parents' asserted IDEA violations.

**1**

In determining whether the Parents' substantive IDEA claims meet the second prong of the capable-of-repetition exception, we do not write on a blank slate. We thus more thoroughly examine the holdings of *Steven R.F.* and *Nathan*

27

*M.*—our prior mootness decisions in the IDEA context—to determine the principles that govern our decision here.

First, in *Steven R.F.*, we concluded that a school district could not invoke the capable-of-repetition exception because it failed to show a reasonable expectation that it would be subject to the *same* action again.  This was so, because the challenges at issue—the district's purported violation of an earlier SCO order, its failure to base its decisions on the student's educational needs, its wrongful predetermination of the student's placement, and its omission of a written offer of educational placement—"were based on specific actions that [the mother] alleged the District did not take in relation to [her son's] 2016–2017 IEP." *Steven R.F.*, 924 F.3d at 1316.

We reasoned that the school district, as the proponent of the mootness exception, bore the burden of showing the exception applied, yet "there [was] no reason to conclude—mu[ch] less a demonstrated probability—that any subsequent IDEA challenge will be premised on the *same* procedural shortcomings by the District that [the] [m]other challenge[d] in this case," and "[n]othing suggest[ed] that the[] alleged procedural failures w[ould] be at issue in any subsequent IDEA challenge[s]." *Id.* at 1315–16 (emphasis added).  "Even assuming . . . [the] reasonable expectation of future IDEA disputes between the District and [the] [m]other"—indeed, even assuming the question of "whether the District w[ould] have to maintain [the child's] enrollment at Alpine" would be raised by the

mother in future challenges—such expectations "d[id] not satisfy the mootness exception in this case because the procedural challenges [the] [m]other raise[d] [were] fact-specific to [her son's] 2016–2017 IEP proceedings." *Id.* at 1314. Thus, "[i]f we decided . . . more than three years after the *challenged* actions[] whether those alleged failures amounted to a violation of the IDEA, we 'would be issuing, in effect, an advisory opinion,'" which would "do nothing to define the contours of the parties' continuing legal relationship under the IDEA such that future repetitions of the injury could be avoided." *Id.* at 1316 (emphasis added) (quoting *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 599–600 (7th Cir. 2006)); *see also id.* at 1314–15 (noting that the mother, in effect, got the relief she sought originally because her son "remained at Alpine for," at least, "the 2016–2017 schoolyear" by operation of the IDEA's stay-put provision).

In *Nathan M.*, we further detailed the precise contours of the second-prong inquiry in the IDEA context. We noted first that the difficulty in assessing the second prong—i.e., whether there was "a reasonable expectation that the same complaining party would be subjected to the same action again"—"stem[med], in part, from a lack of precision in our cases describing exactly *what* must be likely to recur." *Nathan M.*, 942 F.3d at 1041 (quoting *Murphy*, 455 U.S. at 482). *Steven R.F.*, however, "clarified the target of our capable-of-repetition inquiry in IDEA disputes: '[T]he capable-of-repetition exception in the IDEA context looks at the likelihood that the *specific* IDEA violations alleged will be repeated.'" *Id.*

29

at 1042 (alteration in original) (quoting *Steven R.F.*, 924 F.3d at 1316). "Put another way, 'the "wrong" that is, or is not, "capable of repetition" must be defined in terms of the *precise controversy* it spawns.'" *Id.* at 1043 (quoting *People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 422 (D.C. Cir. 2005)).[7]

"Pulling these various threads together," we held that,

> to satisfy the second prong of the capable-of-repetition exception to mootness, [the aggrieved parent] bears the burden of establishing that it is "reasonably likely that the District will again violate the IDEA in the specific ways that [she] alleges it did in this case." She may not generally allege that the District will deny [her child] a FAPE at some point in the future. There must exist a "continuing controvers[y]" between the parties presenting "legal questions" for resolution, ensuring that our

---

[7]    The aggrieved mother in *Nathan M.* attempted to distinguish *Steven R.F.* based on the type of challenges raised in that case; unlike *Steven R.F.*, she asserted that her appeal "involve[d] substantive violations of the IDEA, or 'fundamental disagreements between the parties about what special education and related services and what educational placement and programming [her son] need[ed] in order to receive a [FAPE].'" *Nathan M.*, 942 F.3d at 1042 (quoting Aplt.'s Supp. Br., No. 19-1008, at *5–6 (10th Cir. Aug. 12, 2019)). In the mother's eyes, "she and the District ha[d] a 'reasonable expectation' of rehashing . . . fundamental, substantive disagreements every year, [thereby] satisfying the mootness exception's second prong." *Id.* But we posited that the mother "ha[d] learned the wrong lesson from *Steven R.F.*" in making her procedural-substantive distinction. *Id.* Indeed, "[n]othing in *Steven R.F.* support[ed] [the mother's] argument that we require less specificity when faced with substantive rather than procedural challenges." *Id.* "To the contrary," *Steven R.F.* "teaches that we demand specificity in all cases to ensure that our disposition of a technically moot but capable-of-repetition controversy will help to 'define the contours of the parties' continuing legal relationship under the IDEA such that future repetitions of the injury could be avoided.'" *Id.* at 1042–43 (quoting *Steven R.F.*, 924 F.3d at 1316).

decision on the merits will "define the contours of the parties' continuing legal relationship under the IDEA such that future repetitions of the injury could be avoided." A pattern of related but distinct and factually specific controversies will not suffice because our resolution of one dispute will leave the others unresolved and just as likely to occur in the future.

*Id.* (second and fourth alterations in original) (citations and footnote omitted) (first quoting *Steven R.F.*, 924 F.3d at 1316; then quoting *Gittens*, 396 F.3d at 422–23; and then quoting *Steven R.F.*, 924 F.3d at 1316).

Applying this analysis to the facts in *Nathan M.*, we concluded that the case did not satisfy the capable-of-repetition exception. "As was the case in *Steven R.F.*," Nathan M.'s mother "allege[d] a variety of procedural and substantive IDEA violations regarding [her son's] 2016 IEP." *Id.* at 1044. To decide whether these alleged violations satisfied the exception, we did not consider them "in gross," but rather considered "the likelihood that [each] *specific IDEA violation*[] *alleged* w[ould] be repeated." *Id.* (first quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); and then quoting *Steven R.F.*, 924 F.3d at 1316). For instance, with regard to the allegations that the district "predetermined [her son's] educational placement" and "failed to review current evaluation data in developing [her son's] IEP," the mother "entirely fail[ed] to address why a 'reasonable expectation' exist[ed] that the District w[ould] again commit these procedural violations." *Id.*; *see id.* (seeing "no basis in the record for assuming, without any facts or even an allegation . . . , that the District will again

31

predetermine [the child's] placement or review outdated evaluation data").

Likewise, the mother "d[id] not allege that the District would again fail to . . . ensure the attendance of Alpine staff at IEP meetings." *Id.* And the mother's allegations that the district's IEP process "failed to properly consider [her son's] behaviors and develop an adequate [behavioral intervention plan]," or "provide special education and related services necessary to allow [her son] to make progress appropriate in light of his circumstances," "suffer[ed] from a fatal vagueness." *Id.* at 1044–45. Moreover, the mother failed to demonstrate how these allegations subsumed ongoing "'legal questions' [needing] resolution," rather than "fact-specific disagreement[s] unlikely to recur in a recognizable form in a future IEP." *Id.* at 1045 (quoting *Gittens*, 396 F.3d at 422–23).

Thus, "[n]othing in [the mother's] briefing hint[ed] at a '*precise controversy*' presenting 'legal questions' for our decision." *Id.* at 1046 (quoting *Gittens*, 396 F.3d at 422–23). And "[a]lthough [the mother] and the District may continue to lock horns over [her child's] educational placement, their dispute ha[d] not sharpened into a specific legal controversy that [we were] capable of resolving." *Id.* Accordingly, because "our decision on the merits of [the child's] 2016 IEP could have no effect 'in the real world,' and could do nothing to avoid future conflict," the case was moot "and not capable of repetition but evading review." *Id.* (citations omitted) (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1110).

32

The upshot of our holdings in *Steven R.F.* and *Nathan M.* is that an IDEA claim is capable of repetition in the mootness context only when an asserted IDEA violation involves an ongoing legal controversy that our decision may actually resolve; "[a] pattern of related but distinct and factually specific controversies will not suffice." *Nathan M.*, 942 F.3d at 1043. And a party asserting that a legal issue is capable of repetition must frame this issue with specificity. Vague assertions that a school district and a student's parents will continue to "lock horns" over a student's placement cannot, on their own, make out a reasonable probability that the *same* legal controversy will repeat itself. *See id.* at 1046. With these controlling parameters in mind, we turn to Patrick's parents' asserted controversy.

**2**

Patrick's parents have not shown a reasonable expectation that the specific IDEA violations they have alleged—all of which are based on Patrick's now-expired 2016 IEP—will be repeated. In their due process complaint, the Parents asserted that the School District violated the IDEA because it (1) failed to conduct a "full or adequate reevaluation of Patrick . . . that was necessary to develop *an appropriate IEP*," (2) failed to "include any staff from Patrick's current educational placement at Alpine" or other "individuals who had specific and current knowledge about Patrick and his educational needs" *at his IEP meeting*, and (3) "pre-determined Patrick's educational placement at Mountain

33

Vista" by *writing his IEP* "specifically for the classroom at Mountain Vista in which they wished to place him." Aplts.' App., Vol. III, at 602 (emphasis added).

Before the district court, Patrick's parents further specified that the School District violated the IDEA because (1) *the 2016 IEP* was "not appropriately ambitious," *id.*, Vol. I, at 89–90 (D. Ct. Opening Br., filed Sept. 22, 2017) (capitalization omitted); (2) the District failed to conduct a full evaluation *in formulating the IEP*, *see id.* at 90–92; (3) the District failed to invite Alpine representatives *to IEP meetings*, *see id.* at 92–93; (4) the District failed to consider behaviors and develop a behavior intervention plan *for the IEP*, *see id.* at 93–95; (5) the District unilaterally limited certain services *in the IEP*, *see id.* at 95–97; and (6) the District pre-determined Patrick's placement at a 2015 meeting *in advance of formulating the 2016 IEP*, *see id.* at 97–98.

As evident from the foregoing, all of the Parents' IDEA claims center on the District's actions—or lack of actions—in developing the 2016 IEP. Accordingly, those claims the Parents actually raised in the administrative proceedings and before the district court evince a series of fact-specific disputes over a particular IEP that has since been superseded, not a sweeping challenge to the District's policies or educational philosophies. Under our precedents examining mootness in the IDEA context, the Parents bear the burden of showing "the likelihood that the *specific* IDEA violations alleged will be repeated." *Steven R.F.*, 924 F.3d at 1316 (emphasis added). They have not carried this

34

burden.

Indeed, the Seventh's Circuit's opinion in *Brown*—which we relied upon in *Steven R.F.* and *Nathan M.*—illustrates why the Parents' IDEA claims do not come under the "capable of repetition" umbrella:

> Here, [the student's] autism presents an evolving set of challenges for educators, one that requires his IEP to be periodically revised. What was right for [the student] in kindergarten may not be the proper educational program when he enters the third grade. The dispute over the [earlier] IEP turned on whether [the student] was ready for full-time mainstream class. Now, as a nine-year old, [the student's] readiness for mainstream education presents a different question calling for reassessment of his educational development. Were we to decide, at this later date, whether mainstreaming was right for [him] back in 2002–2003, we would be issuing, in effect, an advisory opinion. Our decision would merely tell the parties who was correct about [the student's] outdated IEP. It would do nothing to define the contours of the parties' continuing legal relationship under the IDEA such that future repetitions of the injury could be avoided. The case therefore must be dismissed as moot.

*Brown*, 442 F.3d at 599–600; *accord Nathan M.*, 942 F.3d at 1043, 1046; *Steven R.F.*, 924 F.3d at 1316; *see also J.T. v. District of Columbia*, 983 F.3d 516, 525–26 (D.C. Cir. 2020) (discussing both *Nathan M.* and *Brown* and finding that they "provide persuasive support for the conclusion" that the student's "precise controversy alleged in [his due process] complaint . . . does not present the type of recurring legal question"—i.e., a "recurring legal question[] arising from the [IDEA]"—that "the capable of repetition but evading review exception to mootness was designed to

35

permit").

On appeal—perhaps in recognition of the uphill challenge their claims face in the wake of *Nathan M.* and *Steven R.F.*—the Parents attempt to reframe their argument to show a reasonable expectation that the School District will continue to violate the IDEA. Without addressing their specific arguments in either the due process complaint or before the district court,[8] they assert that the "heart of this case involves an irreconcilable dispute between the Parents and the School District about Patrick's educational placement needs, which will be an issue of controversy every time the School District develops a new IEP or proposes a new placement." Aplts.' Opening Br. at 23.

But this attempt to course-correct—from a challenge to the School

---

[8]    As the School District points out, Patrick's parents do not raise several of their specific IDEA challenges—like the District's failure to include representatives from Alpine, its failure to conduct an adequate student reevaluation, its failure to include a special education teacher in certain evaluations, and its actions to predetermine his placement—in their opening brief on appeal. *See* Aplee.'s Resp. Br. at 15 (noting that Patrick's parents "do not challenge the mootness of the[] 2016 procedural claims and do not cite to anything in the record indicative that these claims . . . are apt to be repeated"). Patrick's parents have thus waived these arguments. *See United States v. Black*, 369 F.3d 1171, 1176 (10th Cir. 2004) ("Failure to raise an issue in the opening appellate brief waives that issue."); *see also Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (noting that "we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief"). And, based on our holdings in *Nathan M.* and *Steven R.F.*, the challenge that they preserve on appeal is plainly insufficient to meet the capable-of-repetition exception.

District's alleged shortcomings in formulating a specific IEP to a challenge

about Patrick's educational placement—is both procedurally improper and

substantively insufficient. On a procedural level, the IDEA required the

Parents to administratively exhaust any of their claims that the District had

denied Patrick a FAPE before suing in federal court. *See* 20 U.S.C.

§ 1415(i)(2)(A); *see also Fry v. Napoleon Comm. Schs.*, 580 U.S. 154, 137

S. Ct. 743, 752 (2017) (reaffirming the proposition that a plaintiff must

exhaust the IDEA's procedures when a suit "seek[s] relief for the denial of

a FAPE"). Among the requisite procedures, the Parents had to specify in

their due process complaint the precise issues for which they sought relief.

*See* 20 U.S.C. § 1415(f)(3)(B). If they failed to raise issues in their

complaint, the IDEA provides that they "shall not be allowed to raise [new]

issues" in their due process hearing "unless the other party agrees

otherwise." *Id.* Accordingly, by attempting to raise on appeal an

argument that they did not raise in their administrative proceedings, the

Parents have failed to satisfy the IDEA's exhaustion requirement. *See*

*Cnty. of San Diego v. California Special Educ. Hearing Off.*, 93 F.3d 1458,

1465 (9th Cir. 1996) (holding a party was precluded from asserting an

IDEA argument before the district court that was not raised in the due

process complaint). They cannot salvage their otherwise moot claims by

reframing them in broader, less defined terms. *Cf. J.T.*, 983 F.3d at 526–27

37

(observing, in the IDEA context, that "the assertion of broader injuries than those alleged in a complaint [should be] me[t] with skepticism in evaluating mootness, if they are considered at all"); *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) (en banc) ("[W]here plaintiffs are resisting a mootness claim we think they must be estopped to assert a broader notion of their injury than the one on which they originally sought relief.").

Substantively, the Parents' new argument also runs afoul of *Nathan M.* and *Steven R.F.* by failing to pinpoint a "'*precise controversy*' presenting 'legal questions' for our decision," so we may evaluate "the likelihood that [each] *specific* IDEA violation[] alleged will be repeated." *Nathan M.*, 942 F.3d at 1044, 1046 (first quoting *Gittens*, 396 F.3d at 422–23; and then quoting *Steven R.F.*, 924 F.3d at 1316).  Instead, they generically and vaguely assert that they are likely to keep arguing with the District over Patrick's educational placement in the coming months and years due to "an irreconcilable dispute between the Parents and the School District about [his] educational placement needs."  *See, e.g.*, Aplts.' Opening Br. at 23 (claiming this case is capable of repetition, yet evading review, because the "irreconcilable dispute . . . about Patrick's educational placement needs . . . will be an issue of controversy *every time* the School District develops a new IEP or proposes a new placement" (emphasis added)).

38

But such a claim is precisely the type of dispute we said was insufficient to meet the "capable of repetition" exception in the IDEA context. *See Nathan M.*, 942 F.3d at 1043, 1046 (noting, *inter alia*, that (1) "the 'wrong' that is, or is not, 'capable of repetition' must be defined in terms of the *precise controversy* it spawns"; (2) the aggrieved party "may not generally allege that the District will deny [the student] a FAPE at some point in the future"; and (3) the sheer possibility "[the parents] and the District may continue to lock horns over [the student's] educational placement" has not "sharpened into a specific legal controversy that this court is capable of resolving" (quoting *Gittens*, 396 F.3d at 422)).

Although the Parents cite several cases that they claim counsel in favor of applying the capable-of-repetition exception in this instance, these cases are readily distinguishable; indeed, some we have already distinguished in prior cases. For example, the Parents invoke the Fifth Circuit's decision in *Daniel R.R. v. State Board of Education*, in which the court applied the capable-of-repetition exception to a dispute over whether the student ought to be "mainstreamed", as the "inverse" of the dispute in this case. *See* Aplts.' Opening Br. at 24–25 & n.5 (citing *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1039–41 (5th Cir. 1989)). In *Nathan M.*, however, we explained that attempts to rely on *Daniel R.R.* were "misplaced," because the "legal controversy [in that case] did not depend

39

on the facts of a particular IEP, but on the parties' understanding of the IDEA's mainstreaming obligation." *Nathan M.*, 942 F.3d at 1045 n.9. In contrast, where the school district and a parent "d[id] not . . . disagree on any of the IDEA's requirements, or even the *kind* of supports and services [the student] require[d]," and had "given us no reason to assume" that the an identical disagreement "on the *degree* of the supports required or offered" at particular schools "w[ould] be present in a future IEP," it rendered *Daniel R.R.* distinguishable. *Id.*

The Parents do not explain why *Daniel R.R.* is more applicable to this dispute—which is based on fact-specific due process challenges to an expired IEP—than it was to the dispute in *Nathan M.* Nor does our precedent allow them to so broadly define their legal dispute (e.g., an allegation that the district court denied Patrick a FAPE, generally) to suddenly bring their claim within *Daniel R.R.*'s purview.[9]

The Parents' reliance on the Supreme Court's decisions in *Honig* and *Rowley* is also misplaced. In *Steven R.F.*, we addressed *Honig*—in which the Supreme Court held a challenge to a school district's policy of indefinitely excluding disabled children for violent conduct to be capable of

---

[9]    Of course, even if *Daniel R.R.* was exactly on point, it cannot bind or govern our disposition—and it does not help the Parents when they have offered very little to distinguish their circumstances from those we found moot in *Steven R.F.* and *Nathan M.*

40

repetition because of the "certainty of the continued dispute." *See Steven R.F.*, 924 F.3d at 1315–16. There, we held "there [was] no reason to conclude—mu[ch] less a demonstrated probability—that any subsequent IDEA challenge w[ould] be premised on the same procedural shortcomings by the District that [the parent] challenge[d]." *Id.* at 1315; *see also Nathan M.*, 942 F.3d at 1043 n.7 ("Deciding *Honig* on its merits allowed the Court to resolve the legality of the school district's policy of unilaterally removing disabled students who engaged in disruptive behavior from public school. . . . Had the District here relied on a similar policy or blanket rule to eliminate Alpine as a possible placement for [the student], [he] likely could meet the capable-of-repetition exception. But here, the District determined [the student's] placement by examining the then-existing circumstances particular to [the student's] age, needs, and development."). A similar conclusion is apt here. The Parents do not raise any kind of policy challenge in this case. Likewise, they cannot rely on a case like *Rowley*, which presented a question of "statutory interpretation" and discussed a mootness argument only in passing. *See Rowley*, 458 U.S. at 179, 186 n.9. With no controlling authority to the contrary, *Nathan M.* and *Steven R.F.* govern our disposition of this case.[10]

---

[10]    Patrick's parents point to a few additional out-of-circuit decisions in

(continued...)

Finally, beyond their bid to reframe their substantive challenge in broader terms, the Parents also strive, unsuccessfully, to argue that their disputes have already recurred. On this score, they point to the 2019 and 2020 IEPs developed by the District and Patrick's IEP Team as evincing disputes similar to or identical to those that generated the original due process complaint. *See* Aplts.' Opening Br. at 29–30. But this argument is little more than the Parents' reframing argument dressed in a different guise: the ongoing "specific legal controversy" in Patrick's 2019 and 2020 IEPs involves the School District's "reject[ion] [of] the autism-specific

---

¹⁰(...continued)
which courts have held that controversies about "conflicting educational philosophies," *see Sacramento City Unified Sch. Dist. v. Rachel H. ex rel. Holland*, 14 F.3d 1398, 1403 (9th Cir. 1994), and "irreconcilable views on the extent to which the IDEA requires a school to provide services," *see Rome Sch. Comm. v. Mrs. B.*, 247 F.3d 29, 32 (1st Cir. 2001), were capable of repetition yet evading review, *see* Aplts.' Opening Br. at 26. But the Parents fail to explain how these cases distinguish our otherwise on-point precedent—especially in the IDEA context, which is sensitive to the unique circumstances of each child. *Cf. Ellenberg*, 478 F.3d at 1277 (noting that our review in the IDEA context "is necessarily fact-intensive, requiring careful analysis of the particular child's needs and abilities"). Furthermore, our independent analysis of these cases reveals that they continue to draw a firm line between "factual dispute[s]" over IEPs, which "change shape as the years go on" and more fundamental disputes over whether "the IDEA requires a school to provide [certain] services." *Rome Sch. Comm.*, 247 F.3d at 32; *see Rachel H.*, 14 F.3d at 1402–03 (distinguishing between a dispute over an appropriate placement in a given year and a "view that a child with [a certain] IQ is too severely disabled to benefit from full-time placement in a regular class"); *see also Jenkins v. Squillacote*, 935 F.2d 303, 308 (D.C. Cir. 1991) (applying exception where "both litigants readily agreed that [the controversy] . . . is a recurring one").

42

separate school and adopt[ion] of a public school placement." *Id.* at 29.  As we have already noted, a continuing dispute over where Patrick should go to school, without more, does not evince the specificity we required in *Steven R.F.* and *Nathan M.*  Nor does it describe the specific allegations raised in the original due process complaint, which included allegations that the District, *inter alia*, failed to provide Patrick with SLP and OT services, failed to conduct certain evaluations with respect to the 2016 IEP, failed to include Alpine staff in meetings concerning the 2016 IEP, and denied Patrick's parents a meaningful opportunity to participate in crafting the 2016 IEP.  *See generally* Aplts.' App., Vol. III, at 602–03.

It is not enough for Patrick's parents to claim that they continue to "lock horns" over Patrick's education, *see Nathan M.*, 942 F.3d at 1046; rather, the Parents must demonstrate that the "IDEA violations [they originally] assert[ed] are likely to happen again," *Steven R.F.*, 924 F.3d at 1316.  They have not done this.

Patrick's factual circumstances have no doubt changed in the five years since he originally brought the due process complaint at issue here. Furthermore, that complaint alleged numerous violations by the District with regard to the long-expired 2016 IEP.  Patrick's parents do not demonstrate how these allegations still represent a live controversy—or a controversy capable of repetition, yet evading review—and "the record

43

does not indicate that it is reasonably likely that the District will again violate the IDEA in *the specific ways that [they] allege[] it did in this case*." *Id.* (emphasis added). Thus, because the Parents' substantive claims are moot and fall outside of the capable-of-repetition exception, we uphold the district court's dismissal of these claims.

## B

Our analysis does not end, however, in holding Patrick's substantive challenges to his IEP moot. Unlike in *Nathan M.* and *Steven R.F.*, the district court came to the additional conclusion that, because Patrick's substantive challenges to his IEP were moot, so too were his claims for attorney's fees as a prevailing party in the administrative proceedings, for compensatory relief based on the School District's failure to reimburse him as a single-payee, and for an injunction maintaining his educational placement during the pendency of the proceedings. *See Patrick G.*, 2020 WL 5877604, at *6–7. Patrick's parents contend, the outcome of their IDEA claims notwithstanding, that the district court erred in failing to decide these claims. This appeal thus requires us to resolve the extent that our mootness holding as to the Parents' substantive IDEA claims renders us incapable of affording Patrick other "real world" relief.

We separately evaluate each claim to determine whether it presents an actual, ongoing controversy. *See Nathan M.*, 942 F.3d at 1044 ("[W]hen

44

it comes to mootness, '[e]ach claim must stand or fall on its own.'"
(quoting *Taxpayers for the Animas-La Plata Referendum*, 739 F.2d at 1479
n.2)); *cf. Prison Legal News*, 944 F.3d at 880 (explaining that we "must
decide whether a case is moot as to 'each form of relief sought'" (quoting
*Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019))).  We hold that
the attorney's fee issue and alternative-payee issue are not moot, and
reverse and remand back to the district court to allow it to rule on the
merits of these claims in the first instance.  As to the stay-put issue,
however, we hold that the claim—as framed by the Parents—is moot.

**1**

Patrick's parents first argue their claim for attorney's fees is not
moot because it continues to present a live controversy independent of their
substantive IDEA claims.  As a general matter, we have held that "a district
court may still award attorney's fees after dismissing [an] underlying action
for lack of subject-matter jurisdiction.  This is because a claim for
attorney's fees gives rise to issues separate and distinct from the merits of
the original cause of action." *D.A. Osguthorpe Fam. P'ship v. ASC Utah,
Inc.*, 705 F.3d 1223, 1236 (10th Cir. 2013) (citation and footnote omitted);
*cf. United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1057–58
(10th Cir. 2004) (holding that a court maintained jurisdiction to award
attorney's fees for vexatious litigation when the underlying False Claims

45

Act suit was dismissed for lack of subject matter jurisdiction).  And we have previously held this principle applies where substantive claims are moot, reasoning that "[w]hile a claim of entitlement to attorney's fees does not preserve a moot cause of action, the expiration of the underlying cause of action does not moot a controversy over attorney's fees *already incurred*."  *Dahlem ex rel. Dahlem v. Bd. of Educ. of Denver Pub. Schs.*, 901 F.2d 1508, 1510–11 (10th Cir. 1990) (emphasis added) (citation omitted).

These principles are equally applicable in the IDEA context.  Parents "prevail [on IDEA attorney's fee claims] '"when actual relief on the merits of [the child's] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the [parents]."'"  *Miller*, 565 F.3d at 1247 (second alteration in original) (quoting *Urban v. Jefferson Cnty. Sch. Dist. R-1*, 89 F.3d 720, 729 (10th Cir. 1996)); *accord Fowler v. Unified Sch. Dist. No. 259*, 128 F.3d 1431, 1439 (10th Cir. 1997) (noting that "Congress intended the term 'prevailing party' to mean the same under [the IDEA] as it does under 42 U.S.C. § 1988" (quoting *Urban*, 89 F.3d at 728–29)).  Under the IDEA, "prevailing parties" in administrative proceedings *must* seek attorney's fees in the district court after these proceedings have concluded.  *See* 20 U.S.C. § 1415(i)(3)(B); *see Bd. of Educ. of Oak Park v. Nathan R. ex rel. Richard*

*R.*, 199 F.3d 377, 381 & n.10 (7th Cir. 2000) (acknowledging that "a party may file an independent suit in the district court to recover attorneys' fees from an IDEA administrative proceeding" and that such suit is, "[i]n fact, the only means by which a party may recover attorneys' fees for the administrative proceedings . . . because [the IDEA] only authorizes the courts, and not the administrative hearing officer, to award the attorneys' fees"); *see also R. M-G v. Bd. of Educ. for the Las Vegas City Schs.*, 645 F. App'x 672, 677 (10th Cir. 2016) (unpublished) ("The IDEA clearly allows the pursuit of a lawsuit solely to recover fees."). "[T]he 'magnitude of the relief obtained' is irrelevant for determining the prevailing party," though the "degree of the plaintiff's overall success goes to the reasonableness of a fee award." *Miller*, 565 F.3d at 1247 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

Because the question of whether Patrick's parents were a "prevailing party" in the administrative proceedings remains a live controversy independent from the substantive IDEA challenge in the district court, their attorney's fee claim is not moot. Their request for attorney's fees in the district court was based on what they contend was partial merits relief in their favor from the ALJ. The administrative due process proceedings became final before the Parents' IEP expired. Patrick's parents incurred the attorney's fees in question during these proceedings. And the

prevailing party analysis simply seeks to determine whether Patrick's

parents should be awarded these fees based on the settled outcome of the

administrative proceedings.  Thus, the district court "granting a present

determination of the issue[]"—here, whether Patrick's parents were

prevailing parties in the administrative proceedings—would "have some

effect in the real world" independent of the now-moot dispute over whether

the 2016 IEP had denied Patrick a FAPE.  *Miller*, 565 F.3d at 1250

(quoting *Kan. Jud. Rev. v. Stout*, 562 F.3d 1240, 1247 (10th Cir. 2009)); *cf.*

*Garcia*, 520 F.3d at 1124 (holding requests for "backward-looking relief"

were not moot even though a student was ineligible for prospective IDEA

relief).

The district court incorrectly concluded that the attorney's fee claim

would have required it to interpret the Parents' moot substantive claims.  In

making this ruling, it cited our decision in *Moseley v. Bd. of Educ. of*

*Albuquerque Pub. Schs.*, 483 F.3d 689 (10th Cir. 2007), and the Seventh

Circuit's decision in *Nathan R*.  *See Patrick G.*, 2020 WL 5877604, at *7.

*Moseley* does not control here, however, and *Nathan R.* actually supports

the opposite result.  True, in *Moseley*, we stated that, because the

appellant's "underlying substantive claims [were] moot, [he] c[ould not]

recover attorney's fees and costs."  *Moseley*, 483 F.3d at 694; *cf. Steven*

*R.F.*, 924 F.3d at 1316 n.7 (reasoning that, "[b]ecause the case is moot, the

48

court does not have jurisdiction to make a determination on the merits, and [the parent] cannot be a 'prevailing party' under the IDEA"). But while the appellants requested fees in the district court, *see Moseley*, 483 F.3d at 692, they failed to argue that the attorney's fee issue could survive apart from their substantive IDEA claims, *see* Aplts.' Supp. Br., *Moseley*, No. 06-2157 (10th Cir. filed Feb. 27, 2007); *cf. Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1288 (10th Cir. 2017) (reviewing the briefing in a prior Tenth Circuit case to "confirm[] that the parties never challenged" a particular issue).

*Moseley*'s single-sentence comment on the mootness of the appellants' attorney's fee claim pertains to a "legal proposition not necessarily involved nor essential to determination of the case in hand"; thus, it is dicta, and it is not controlling here, in a circumstance where the Parents have asserted that their attorney's fee claim independently survives. *Tokoph v. United States*, 774 F.3d 1300, 1303 (10th Cir. 2014) (quoting *United States v. Villarreal-Ortiz*, 553 F.3d 1326, 1328 n.3 (10th Cir. 2009)); *see id.* ("[A] panel of this court is bound by a *holding* of a prior panel of this court but is not bound by a prior panel's *dicta*." (alteration in original) (quoting *Bates v. Dep't of Corr.*, 81 F.3d 1008, 1011 (10th Cir. 1996))).

In contrast, *Nathan R.*—cited by both the district court and *Moseley*, *see* 483 F.3d at 694—makes clear that an attorney's fee claim is *not* moot

when predicated on the (allegedly) favorable merits relief a claimant obtained from an administrative decision.  In *Nathan R.*, the parents-appellants obtained favorable rulings from an administrative hearing officer, but the district court partially reversed this ruling and ultimately denied their request for attorney's fees, concluding the school district had prevailing-party status and not the appellants.  *See Nathan R.*, 199 F.3d at 379–80.  On appeal, the Seventh Circuit vacated the district court judgment, holding the substantive claims at issue were moot because the appellants' child had graduated.  *See id.* at 381.  It also observed that, "[b]ecause [it] would need to consider the merits to determine whether the [appellants] [were] prevailing parties," it could not "decide whether the[y] . . . would be entitled to attorneys' fees *from the proceedings in the district court*."  *Id.* (emphasis added).

The *Nathan R.* court, however, acknowledged that it "still c[ould] decide whether the [appellants'] claim for attorneys' fees from the invocation of the stay-put placement [was] valid because that claim *[was] related solely to the administrative proceedings*."  *Id.* (emphasis added).  Recognizing that prevailing parties "may file . . . independent suit[s] in the district court to recover attorneys' fees from an IDEA administrative proceeding," the court noted that the appellants' "claim for attorneys' fees stem[med] solely from the imposition of the stay-put placement, *which*

50

*[was] part of the administrative hearing.*" *Id.* at 381–82 (emphasis added); *cf. id.* at 382 ("We may consider only [the appellants'] claim for attorneys' fees stemming from the imposition of the stay-put placement *because any other decision would go to the merits of the action which are now moot.*" (emphasis added)). Thus, the appellants' fee claim, predicated on the administrative proceedings, was "sufficient to allow th[e] court to decide whether they [were] prevailing parties and entitled to attorneys' fees." *Id.*

*Nathan R.*'s persuasive logic is supported by additional caselaw from our sister circuits. For instance, in *Lauren C. ex rel. Tracey K. v. Lewisville Independent School District*, the Fifth Circuit held a district court lacked jurisdiction to rule on an appellant's substantive IDEA claims, which "became moot when [the student] aged out of eligibility for special education services." 904 F.3d 363, 372 (5th Cir. 2018). However, the court "agree[d] with [the student] that whether she [was] entitled to attorneys' fees as a prevailing party [was] a question *independent of* whether" her underlying, substantive IDEA claims were moot. *Id.* at 373 (emphasis added). Noting that "[t]he attorneys' fees question turn[ed] . . . on a wholly independent consideration: whether [the] plaintiff [was] a 'prevailing party,'" the court "reject[ed] [the school district's] argument that the mootness of the underlying merits automatically defeat[ed] any entitlement by [the student] to fees" because—relying on *Nathan R.*—the

court "could decide a fee issue in an otherwise moot IDEA case [where] the fee claim was 'related solely to the administrative proceedings.'" *Id.* (first quoting *Murphy v. Fort Worth Indep. Sch. Dist.*, 334 F.3d 470, 471 (5th Cir. 2003); and then quoting *Nathan R.*, 199 F.3d at 381).

The First Circuit reached the same conclusion in a somewhat different context. In *J.S. v. Westerly School District*, the circuit was faced with a substantive IDEA suit rendered moot by the student's departure from the purportedly offending school district. *See* 910 F.3d 4, 9 (1st Cir. 2018). On appeal, among other things, the school district challenged the district court's award of attorney's fees to the student, contending it was "based upon an erroneous interpretation of the IDEA." *Id.* at 10. The circuit "note[d] at the outset that, although the substantive question underlying the fee award [was] moot . . . , the fee-shifting issue [was] not" because the student had "clearly succeeded in obtaining the relief sought . . . [before] an intervening event rendered the case moot on appeal." *Id.* at 9 (quoting *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 454 (1st Cir. 2009)). Because the "predicate issue [was] moot," however, the court could not "recoup jurisdiction over the merits by ruling on a question about attorneys' fees." *Id.* at 10. Consequently, "in asking whether the [student and her parents] prevailed," the court "look[ed] 'only to what relief the district court granted and not to whether the case was rightly decided.'" *Id.* (quoting

*Diffenderfer*, 587 F.3d at 453). "In other words, [the court was required to] turn a blind eye to the merits of the district court's reading of the IDEA, and ask only whether the district court's order rendered the [student and her parents] 'prevailing parties.'" *Id.*; *see also E.D. ex rel. Doe v. Newburyport Pub. Sch.*, 654 F.3d 140, 143–44 (1st Cir. 2011) ("The issue here, of course, is not the merits of the [parents'] claim, . . . but the effect of their leaving [the school district] after the [favorable] action by the [state] appeals board. While their move would obviously affect any claim the[y] . . . might make for prospective relief from any failure to provide an IEP over[] the period after their removal, *it did not moot the claim for fees incurred in seeking the administrative order issued before the move*, based on a finding that [the district] had failed to do its part to produce an adequate IEP. . . . [T]hat eligibility for a fee award is not lost even when subsequent developments render a claim moot overall. . . . If, therefore, the administrative order did make the [parents] 'prevailing parties' before they moved, they were still prevailing when they left town." (citations omitted) (emphasis added)).[11]

---

[11]    The unpublished decision in *R. M-G* also accords with that of our sister circuits. *See R. M-G v. Bd. of Educ. for the Las Vegas City Schs.*, 645 F. App'x 672, 677 (10th Cir. 2016) (unpublished) (noting, where the district court awarded fees based on the parent's fee award in the administrative proceedings, that "[n]othing in the IDEA requires the presence of a substantive challenge to the

(continued...)

Here, the Parents anchor their fee claim in the administrative proceedings, not the proceedings in the district court. The outcome of those administrative proceedings—i.e., the ALJ's decision—remains in force, and it was not vacated or vitiated by the district court's dismissal on mootness grounds. Thus, under the logic of our mootness precedent—along with *Nathan R.* and other cases from our sister circuits—the Parents have a still-viable claim for fees, irrespective of the mootness of their underlying, substantive claims. *Cf. Steven R.F.*, 924 F.3d at 1312–13, 1316 (holding an attorney's fee claim to be moot where the parents obtained a favorable ruling in the district court after they failed to obtain relief from the final administrative hearing officer).

To be sure, the Parents may only recover fees if they qualify as "prevailing parties" under the IDEA—and, even then, a fee award falls within the district court's discretion. *See* 20 U.S.C. § 1415(i)(3)(B). Accordingly, we remand the attorney's fee claim in its entirety, including the predicate question of whether the Parents are prevailing parties, to allow the district court to address this question in the first instance.

---

[11](...continued) administrative proceedings to qualify for an award of fees" and that such a reading of the statute "would mean that a parent who prevails on every single one of her administrative claims would nevertheless have to mount some district court challenge to the administrative proceeding just to qualify for a fee award").

**2**

Similarly, the Parents' reimbursement claims stemming from the due process hearing are not moot. These reimbursement claims center on two separate components of the administrative proceedings: the School District's agreement, shortly before the due process hearing, "to pay the cost of Alpine from May 20, 2016 to the time of the due process hearing," Aplts.' Opening Br. at 15; and the ALJ's order, following the due process hearing, that the School District also "provide reimbursement for the private [OT and SLP] services provided" from December 2015 to the time of the due process hearing, Aplts.' App., Vol. III, at 728. The current "live" dispute, however, is much narrower. The District does not challenge its liability for these reimbursement payments or their amount; rather, it merely disagrees with the Parents on whether it can issue the vast majority of these reimbursement payments to TRICARE. Thus, the only dispute between the parties regarding the Parents' reimbursement claims—i.e., their entitlement to compensation for the District's past failure to pay Patrick's Alpine tuition or provide him with SLP and OT services—appears to be whether the ALJ erred in ruling the District could designate TRICARE as an alternate payee on all reimbursement payments, apart from those payments compensating Patrick's parents for the $35 monthly premiums to

55

TRICARE over the relevant time period.[12]

This discrete "alternate payee" issue relates solely to reimbursement for past violations that remains due and owing. As a general matter, "a claim seeking reimbursement for past education expenses is not moot even if" the student's substantive claims are otherwise moot. *Garcia*, 520 F.3d at 1124 n.3; *see T.S. v. Indep. Sch. Dist. No. 54*, 265 F.3d 1090, 1092 (10th Cir. 2001) (noting the mootness rule "applies . . . where a student [has graduated] . . . and where he is seeking only prospective—rather than compensatory—relief"); *see also Elizabeth B. ex rel. Donald B. v. El Paso Cnty. Sch. Dist. 11*, 841 F. App'x 40, 42 (10th Cir. 2020) (unpublished) (noting that, "because the [student's] complaint seeks actionable reimbursement damages, [her] appeal is not moot"); *cf. Ostby v. Manhattan Sch. Dist. No. 114*, 851 F.3d 677, 685–86 (7th Cir. 2017) ("[T]here is one part of the underlying case that is not moot. . . . [T]he [parents] sought

---

[12]    Patrick's parents argue on appeal that the District "has never provided OT services nor paid the costs associated with the provision of those private services by the parents." Aplts.' Opening Br. at 17; *see also* Aplts.' Reply Br. at 4 (again asserting that the "District has never . . . provided OT services as required" by the ALJ decision). But the School District does not appear to contest its responsibility to reimburse Patrick's parents for these services. *See* Aplee.'s Resp. Br. at 24 (asserting that "the District and the Parents agree to the costs of the gap in services," while disputing whether TRICARE should be included as the alternate payee). The parties' dispute thus boils down to whether the District may issue the reimbursement check to TRICARE as an alternate payee.

reimbursement for private evaluations of [their son]. The district court awarded [them] $3126.10 for that claim and the District did not challenge that ruling on appeal. That part of the district court's judgment is not moot and remains intact on remand.").

Here, the Parents challenge an isolated facet of their reimbursement claims for past IDEA violations. And, while the District does not contest its need to provide reimbursement in any meaningful respect on appeal, it continues to disagree with Patrick's parents on whether it should issue the check to TRICARE. *See* Aplee.'s Resp. Br. at 24 (labeling the Parents' claims as "baseless"). This issue, then, is not moot, and the district court could have decided it without, in effect, rendering an advisory opinion. We thus reverse the district court's mootness determination on this issue as well, remanding for the district court to determine, in the first instance, whether the School District improperly chose to address its reimbursement payments to TRICARE as an alternate payee.

**3**

Finally, Patrick's parents argue that their stay-put claim continues to present a live controversy. The IDEA's "stay-put" provision provides that "during the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed." 20 U.S.C.

57

§ 1415(j); *see also* 34 C.F.R. § 300.518(a).  The Parents contend the School District violated § 1415(j) when it ceased paying Patrick's tuition in November 2019.  *See* Aplts.' Opening Br. at 17–20.  They further argue "[t]he controversy regarding Patrick G.'s educational placement—Alpine versus private school (and all that entails)—remains live and not moot."  *Id.* at 19.  Thus, the "subsequent motion to enforce this statutory and mandatory injunction regarding Patrick's educational placement pending completion of these proceedings was, likewise, a live controversy and was not moot," and the court erred in holding otherwise.  *Id.*

But the Parents' assertion—that their motion for injunctive relief was not moot when they filed it—fails to address whether any request for injunctive relief would *now* be moot following our dismissal of the substantive IDEA claims.  "Generally, a claim for [a] prospective injunction becomes moot once the event to be enjoined has come and gone."  *Prison Legal News*, 944 F.3d at 880 (quoting *Citizen Ctr. v. Gessler*, 770 F.3d 900, 907 (10th Cir. 2014)); *see Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974))).

With respect to their stay-put claim, the Parents argue they are entitled to injunctive relief that will allow Patrick "to remain in his then

58

current educational placement," *see* Aplts.' Opening Br. at 8, so long as the

"*controversy regarding Patrick G.'s educational placement*"—that is,

"Alpine versus private school (and all that entails)—remains live and not

moot," *id.* at 19 (emphasis added); *see also id.* at 8 (describing the "original

'controversy'" as "*the question of the appropriate educational placement*

*for Patrick*" (emphasis added)).  Yet the only "controversy" upon which the

Parents have predicated their stay-put claim—the dispute over Patrick's

placement—is now moot.  In effect, then, our holding that Patrick's

substantive IDEA claims are moot also moots his stay-put claim for

prospective injunctive relief.  Any determination we render concerning the

availability of injunctive stay-put relief—which, as framed by Patrick's

parents, should be imposed while the "controversy regarding Patrick G.'s

educational placement" was pending, *id.* at 19—will no longer have any

"effect 'in the real world,'" *Nathan M.*, 942 F.3d at 1046 (quoting *Rio*

*Grande Silvery Minnow*, 601 F.3d at 1110), because the "proceedings"

during which Patrick's parents argue a "stay put" injunction should have

issued are over (i.e., moot).[13]

---

[13]     Although Patrick seeks reimbursement for other matters, his stay-put arguments appear to implicate only prospective relief.  In particular, neither before the district court nor on appeal has Patrick clearly expressed that his *stay-put claim* includes a demand for reimbursement for the period from the termination of the Alpine contract to the conclusion of district court or appellate

(continued...)

In making this determination, we emphasize that our mootness inquiry is limited to the stay-put theory advanced and relief requested by Patrick G.'s parents before the district court and on appeal. *See Moseley*, 483 F.3d at 694 (declining to address a plaintiff's arguments that "his claims present a live controversy because the IDEA allows for reimbursement and compensatory education services" when he "never requested such relief" and failed to "articulate any equitable relief that

---

[13](...continued)
proceedings. *See, e.g.*, Aplts.' App., Vol. I, at 192 (seeking an injunction before the district court "requir[ing] the School District to maintain Patrick's placement at Alpine Autism Center until the completion of these proceedings" without discussing reimbursement); Aplts.' Opening Brief at 19 (describing the stay-put issue on appeal as involving a "motion to enforce this statutory and mandatory injunction regarding Patrick's educational placement pending completion of these proceedings"). Whether such reimbursement would have been available is not a question before us. *See State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 885 (10th Cir. 2021) (explaining that we rely on the parties to present arguments and issues to the Court).

The significant point for purposes of our jurisdictional analysis is this: Patrick has not argued that his stay-put claim is not moot because it includes a still-viable reimbursement component. Accordingly, whether his stay-put claim is moot must be assessed solely based on its request for prospective relief during the pendency of his challenges to the 2016 IEP. *See Moseley*, 483 F.3d at 693–94 (declining to address a potential argument that a plaintiff's compensatory claims would not have been moot when the plaintiff "never prayed for compensatory damages" and "[t]he tenor of the entire complaint and proceedings in this action [were] for injunctive relief"); *cf. Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1040 (9th Cir. 2009) (considering a reimbursement remedy for a stay-put violation where the proponent specifically advanced reimbursement as a separate remedy). And, because we hold that the district court correctly determined the challenges to the 2016 IEP are moot, we logically conclude that the court also did not err in determining that the intertwined request for prospective, stay-put relief is also moot.

60

would present a live controversy"); *cf. State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 885 (10th Cir. 2021) ("The principle of party presentation is a fundamental premise of our adversarial system.  That means 'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'" (quoting *United States v. Sineneng-Smith*, --- U.S. ----, 140 S. Ct. 1575, 1579 (2020))); *cf. also Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation."); *Utah Poultry Producers Co-op v. Union Pac. R.R. Co.*, 147 F.2d 975, 977 (10th Cir. 1945) (noting that "it is not necessary for us to decide [an issue], because this is not the issue as framed by the parties").

Despite Patrick's parents' assertions that the district court erred by denying their motion for injunctive relief, they make no meaningful argument—supported by authority or even logic—for why this claim is viable (i.e., not moot) following the dismissal of the underlying substantive claims as moot.[14]  And we have no binding authority that conclusively

---

[14]    There is some out-of-circuit authority that conceivably could have provided support for the Parents' cause. *See M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 229–30 (3d Cir. 2017) (holding that the stay-put provision gives rise to a separate "right to monetary reimbursement or, alternatively, the child's right to compensatory education, both of which are rights to backward-looking

(continued...)

answers this jurisdictional question.  At the end of the day, the Parents

must convince us that jurisdiction is present, and we will not make

arguments in this respect for them.  *See, e.g.*, *Devon Energy Prod. Co., L.P.*

*v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1201 (10th Cir. 2012)

("We 'presume[ ] that a cause lies outside this limited jurisdiction [of

federal courts], and the burden of establishing the contrary rests upon the

party asserting jurisdiction.'" (first alteration in original) (quoting

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))); *see*

*also Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011)

("Where an appellant fails to lead, we have no duty to follow.  It is the

appellant's burden, not ours, to conjure up possible theories to invoke our

legal authority to hear [appellant's] appeal.  Neither are we comfortable

guessing for ourselves, without [appellant's] help, what the answer might

be to the complex question . . . .").  And, as to the stay-put claim, the

---

[14](...continued)
compensatory relief and require an independent merits determination").  *But see*
*Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 532 (2d Cir. 2020)
("The stay-put provision does not guarantee a child with a disability 'the right to
remain in the exact same school with the exact same service providers while his
administrative and judicial proceedings are pending. Instead, it guarantees only
the same general level and type of services that the . . . child was receiving.'"
(omission in original) (quoting *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752
F.3d 145, 171 (2d Cir. 2014)).  But the Parents have not cited this potentially
supportive authority—much less made meaningful arguments based on it.

Parents have not offered us anything that supports a determination that jurisdiction is present. Accordingly, we uphold the decision of the district court as to their stay-put claim.

### III

For these reasons, we **AFFIRM** in part the district court's ruling that the Parents' substantive IDEA claims and their stay-put claim—advanced under 28 U.S.C. § 1415(j)—are moot. But we **REVERSE** in part the district court's mootness ruling as to the Parents' attorney's fee and reimbursement claims, and remand to the district court to address the merits of these claims in the first instance.